Citation Nr: 1527828 
Decision Date: 06/29/15 Archive Date: 07/09/15

DOCKET NO. 06-21 369 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Phoenix, Arizona


THE ISSUES

1. Entitlement to service connection for headaches. 

2. Entitlement to service connection for heart palpitations. 

3. Entitlement to service connection for breathing difficulties and chest discomfort. 


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

G. Jivens-McRae, Counsel



INTRODUCTION

The Veteran served on active duty from December 1975 to October 1979. He had subsequent service, including active duty for training (ACDUTRA) from February to July 1984, and a period of active duty in the Southwest Asia theater of operations from August 1991 to April 1992. 

These matters come before the Board of Veterans' Appeals (Board) on appeal from a January 2003 rating decision of the Phoenix, Arizona, Department of Veterans Affairs (VA) Regional Office (RO). 

The claims were previously remanded in October 2009, January 2012, July 2013, and November 2014. 

The issue of entitlement to service connection for headaches is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the Veteran if further action is required on his part. 


FINDINGS OF FACT

1. The Veteran served in the Southwest Asia Theater of operations during the Persian Gulf War. 
 
2. The Veteran's claimed heart palpitations have been attributed to a known clinical diagnosis of premature atrial contractions that are likely physiologic and are normal in all individuals. 
 
3. The Veteran's claimed breathing problems and chest discomfort have been attributed to a known clinical diagnosis of sleep apnea and respiratory symptoms due to obesity.
 
4. The preponderance of the competent and credible evidence of record fails to establish that premature atrial contractions, sleep apnea, and respiratory symptoms due to obesity are etiologically related to the Veteran's active service. 


CONCLUSIONS OF LAW

1. Premature atrial contractions, claimed as heart palpitations, were not incurred in, or aggravated by, active service, and are not the result of an undiagnosed illness. 38 U.S.C.A. §§ 1110, 1117, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.317 (2014).
 
2. Sleep apnea and respiratory symptoms due to obesity, claimed as breathing difficulties and chest discomfort, were not incurred in, or aggravated by, active service, and are not the result of an undiagnosed illness. 38 U.S.C.A. §§ 1110, 1117, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.317 (2014). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Assist and Notify

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2014). Proper notice from VA must inform the claimant and his representative, if any, prior to the initial unfavorable decision on a claim by the AOJ of any information and any medical or lay evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004); Quartuccio v. Principi, 16 Vet. App. 183 (2002). These notice requirements apply to all five elements of a service connection claim (veteran status, existence of a disability, a connection between the veteran's service and the disability, degree of disability, and effective date of the disability). Dingess v. Nicholson, 19 Vet. App. 473 (2006). Information that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded must be included. Id. 

With respect to his claims decided herein, neither the Veteran nor his representative has alleged prejudice with respect to notice, as is required. See Shinseki v. Sanders, 129 S. Ct. 1696 (2009); Goodwin v. Peake, 22 Vet. App. 128 (2008); Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). None is found by the Board. Indeed, VA's duty to notify has been more than satisfied. The Veteran was notified via letters dated in January 2002 and June 2002 of the criteria for establishing service connection, and Persian Gulf regulations, the evidence required in this regard, and his and VA's respective duties for obtaining evidence. He was additionally notified of how VA determines disability ratings and effective dates if service connection is awarded in March 2006. With that letter, the AOJ effectively satisfied the remaining notice requirements with respect to the issues decided on appeal. 

As a matter of law, the provision of adequate VCAA notice prior to a readjudication "cures" any timing problem associated with inadequate notice or the lack of notice prior to an initial adjudication. Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006). Here, after the Veteran was provided the January and June 2002 notices, the matters were readjudicated in supplemental statements of the case. 

Therefore, adequate notice was provided to the Veteran prior to the transfer and recertification of his case to the Board which complied with the requirements of
38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b). 

Next, VA has a duty to assist a veteran in the development of the claims. This duty includes assisting him or her in the procurement of service treatment records and other pertinent records, and providing an examination when necessary. See 
38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. § 3.159 (2014). 

After a careful review of the file, the Board finds that all necessary development has been accomplished, and therefore appellate review of the issues decided herein may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). The AOJ has obtained the Veteran's service treatment records and VA outpatient treatment records. Additionally, the Veteran has submitted private treatment records. The Board has additionally reviewed the Veteran's Veterans Benefits Management System (VBMS) and Virtual VA electronic claims files. The Veteran has indicated that all of his Reserve medical records have not been obtained. However, all searches has been exhausted and on numerous occasions, the same Reserve service entry and separation examinations have been submitted. The response from numerous repositories has been that there are no other medical records available. Moreover, in December 2004, a Formal Finding of Unavailability was associated with the claims file, indicating, in pertinent part, that all efforts to obtain any additional records had been exhausted and the records are not available or do not exist. The record does not otherwise indicate any additional existing evidence that is necessary for a fair adjudication of the claims that has not been obtained.

The Veteran was afforded VA examinations in October 2002, April 2010, February 2012, and January 2015. To that end, when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). 

The Board remanded the claims on four occasions so that additional VA examination could be obtained which addressed all contentions raised by the Veteran. The Board finds that the VA examinations and opinions throughout the appeal address all of the Veteran's contentions and are adequate. They consider all of the pertinent evidence of record, the statements of the appellant, and provide a sufficient rationale for the opinions stated, relying on and citing to the records reviewed. 

Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination or opinion concerning the issues on appeal decided herein has been met. 38 C.F.R. § 3.159(c)(4). 

Further, the Veteran was provided an opportunity to set forth his contentions at an October 2006 RO hearing . In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the United States Court of Appeals for Veterans Claims held that 38 C.F.R. 3.103(c)(2) requires that the RO Decision Review Officer (DRO) or Veterans Law Judge who chairs a hearing fulfill two duties to comply with the above regulation. These duties consist of (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. 

Here, the DRO identified the issues on appeal. The DRO sought to identify any pertinent evidence not currently associated with the claims folder that might have been overlooked or was outstanding that might substantiate the claims. Therefore, not only were the issues "explained in terms of the scope of the claim for benefits," but "the outstanding issues material to substantiating the claim," were also fully explained. See Bryant, 23 Vet. App. at 497. As such, the Board finds that, consistent with Bryant, the DRO complied with the duties set forth in 38 C.F.R. 3.103(c)(2) and that the Board can adjudicate the claims based on the current record. 

Hence, no further notice or assistance is required to fulfill VA's duty to assist in the development of the claims decided herein. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd, 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002). 

Service Connection

Under the relevant laws and regulations, service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. § 1110 (West 2014). Generally, the evidence must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004) (citing Hansen v. Principi, 16 Vet. App. 110, 111 (2002); Caluza v. Brown, 7 Vet. App. 498, 505 (1995), aff'd, 78 F.3d 604 (Fed. Cir. 1996) (table). 

Continuity of symptomatology is required only where the condition noted during service (or in the presumptive period) is not, in fact, shown to be chronic, or where the diagnosis of chronicity may be legitimately questioned. When the fact of chronicity in service is not adequately supported, then a showing of continuity after discharge is required to support the claim. 38 C.F.R. § 3.303(b) (2014). The provisions of § 3.303(b), however, only apply to the list of disabilities identified under § 3.309(a). Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). Service connection may be granted for any disease diagnosed after discharge from active duty when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d) (2014). 

In addition, service connection may be warranted for a Persian Gulf veteran who exhibits objective indications of a qualifying chronic disability that became manifest during active military, naval or air service in the Southwest Asia theater of operations during the Persian Gulf War, to a degree of 10 percent or more. 38 U.S.C.A. § 1117 (West 2014); 38 C.F.R. § 3.317 (2014). Unlike service connection on a direct basis, the provisions of 38 U.S.C.A. § 1117 and 38 C.F.R. § 3.317 do not require competent medical nexus evidence of a link between the qualifying chronic disability and military service. Service connection is presumed unless there is affirmative evidence to the contrary. See Gutierrez v. Principi, 19 Vet. App. 1 (2004). 

Persian Gulf veteran means a veteran who, during the Persian Gulf War, served on active military, naval, or air service in the Southwest Asia theater of operations, which includes Iraq, Kuwait, Saudi Arabia, the neutral zone between Iraq and Saudi Arabia, Bahrain, Qatar, the United Arab Emirates, Oman, the Gulf of Aden, the Gulf of Oman, the Persian Gulf, the Arabian Sea, the Red Sea, and the airspace above these locations. 38 C.F.R. § 3.317 (e). 

For purposes of § 3.317, there are three types of qualifying chronic disabilities: (1) an undiagnosed illness; (2) a medically unexplained chronic multi-symptom illness; and (3) a diagnosed illness that the Secretary determines in regulations prescribed under 38 U.S.C. § 1117(d) warrants a presumption of service connection. 

An undiagnosed illness is defined as a condition that by history, physical examination, and laboratory tests cannot be attributed to a known clinical diagnosis. In the case of claims based on undiagnosed illness, unlike those for direct service connection, there is no requirement that there be competent evidence of a nexus between the claimed illness and service. Further, lay persons are competent to report objective signs of illness. Gutierrez , 19 Vet. App. at 8-9. 

A medically unexplained chronic multi-symptom illness is one defined by a cluster of signs or symptoms, and specifically includes chronic fatigue syndrome, fibromyalgia, and functional gastrointestinal disorders. A medically unexplained chronic multi-symptom illness means a diagnosed illness without conclusive pathophysiology or etiology that is characterized by overlapping symptoms and signs and has features such as fatigue, pain, disability out of proportion to physical findings, and inconsistent demonstration of laboratory abnormalities. Chronic multi-symptom illnesses of partially understood etiology and pathophysiology will not be considered medically unexplained. 38 C.F.R. § 3.317(a)(2). 

Objective indications of chronic disability include both signs, in the medical sense of objective evidence perceptible to an examining physician, and other, non-medical indicators that are capable of independent verification. 38 C.F.R. § 3.317(a)(3). Signs or symptoms that may be manifestations of undiagnosed illness or medically unexplained chronic multi-symptom illness include, but are not limited to, the following: (1) fatigue; (2) signs or symptoms involving skin; (3) headache; (4) muscle pain; (5) joint pain; (6) neurologic signs or symptoms; (7) neuropsychological signs or symptoms; (8) signs or symptoms involving the respiratory system (upper or lower); (9) sleep disturbances; (10) gastrointestinal signs or symptoms; (11) cardiovascular signs or symptoms; (12) abnormal weight loss; and (13) menstrual disorders. 38 C.F.R. § 3.317(b). 

For purposes of § 3.317, disabilities that have existed for six months or more and disabilities that exhibit intermittent episodes of improvement and worsening over a six-month period will be considered chronic. The six-month period of chronicity will be measured from the earliest date on which the pertinent evidence establishes that the signs or symptoms of the disability first became manifest. 38 C.F.R. § 3.317(a)(4). 

Lastly, compensation shall not be paid under § 3.317 if there is affirmative evidence that an undiagnosed illness was not incurred during active military service in the Southwest Asia theater of operations during the Persian Gulf War; if there is affirmative evidence that an undiagnosed illness was caused by a supervening condition or event that occurred between the veteran's most recent departure from active duty in the Southwest Asia theater of operations during the Persian Gulf War and the onset of the illness; or if there is affirmative evidence that the illness is the result of the veteran's own willful misconduct or the abuse of alcohol or drugs. 
38 C.F.R. § 3.317(c). 

Here, the Veteran's personnel records reflect service in Southwest Asia during the Persian Gulf War. Thus, the Board finds that the Veteran is a Persian Gulf Veteran for the purposes of 38 U.S.C.A. § 1117 and 38 C.F.R. § 3.317 and could thus potentially qualify for service connection under 38 C.F.R. § 3. 317. 

Service treatment records do not show findings, treatment, or diagnoses of breathing difficulties or heart palpitations. 

Post-service medical records reflect that the Veteran has complained on multiple occasions of breathing difficulties and heart palpitations. 

VA outpatient treatment records in May 2001 and June 2001 show the Veteran had palpitations and heart pounding by history. 

In October 2002, the Veteran underwent a VA examination. He complained of problems with breathing, wheezing, and shortness of breath. He did not indicate any weight loss. He indicated that he would sometimes cough up sputum in the morning and night, with morning sputum looking red, but no frank blood was shown. Physical examination of the chest and lungs revealed good breath sounds throughout. They were normal to percussion, with no rales, rhonchi, or wheezes. The heart had sinus rhythm with no murmur or gallops. The diagnostic impression was sleep interruption, sleep apnea, dyspnea, very mild. The examiner noted that the Veteran did not exercise and opined that this could be disconditioning. Pulmonary function tests (PFTs) were performed and found to be normal. 

In October 2005, the Veteran was diagnosed with obstructive sleep apnea. However, no etiology for the sleep apnea was provided. In July 2006, the Veteran was seen at Catalyst Chiropractor. Although the chiropractor specifically stated that the Veteran had Gulf War Syndrome, he only treated, per the medical records, the Veteran's right shoulder and neck. 

The Veteran testified at an AOJ hearing in October 2006. He testified that while in service, he breathed depleted uranium while in the Persian Gulf. He also stated that he had an overnight sleep study and was diagnosed with sleep apnea. He indicated that he had irregularity in breathing. 

The Veteran underwent another VA examination in April 2010. It was noted that he had a VA examination in 2002 and that he had chest x-rays, PFTs, and a treadmill EKG. All produced findings within normal limits. During the examination, he made no shortness of breath complaints. In March 2008, he had negative dyspnea, chest tightness, cough, and wheezing. There was no pattern of a respiratory problem that could be found. No medication was provided for a chronic respiratory problem. Until the time of his retirement from the Reserves, the Veteran stated that he fully participated in exercise, ceasing upon retirement. He no longer described sputum with blood or coughing. He denied chest pain, discomfort, wheezing, shortness of breath at rest, orthopnea, paroxysmal, or nocturnal dyspnea. He had no history of respiratory treatment or hospitalization for breathing difficulties. Weight gain was shown but no loss. PFT showed mild restriction likely compatible with obesity. The diagnoses were insomnia and fatigue secondary to sleep apnea, with depression as a factor, dyspnea due to obesity and deconditioning, and no complaints of chest pain. The examiner opined that he could not attribute sleep apnea nor respiratory symptoms of obesity or deconditioning to service, Southwest Asia or otherwise. He stated that fatigue and insomnia may be an element of his diagnosed posttraumatic stress disorder (PTSD) (for which he is already service connected). 

Again, in May 2010, PFTs were normal and showed mild restriction, secondary to the Veteran's weight. 

In January 2015, the Veteran underwent VA examination. The Veteran was found to have a high body mass index, deconditioning, and mild restrictions on PFTs, secondary to obesity and not service in Southwest Asia. He was also diagnosed with premature atrial contractions which were likely physiologic. The examiner stated that the premature atrial contractions were seen in normal individuals throughout the day. This was a well described physiologic condition of known etiology arising from premature firing of the atrial tissue that was not the sinus node tissue. The examiner stated this commonly occurred in all individuals and was not related to specific exposure to Southwest Asia. 

Upon consideration of the above evidence, the Board finds that the preponderance of the evidence is against the claims of service connection for breathing difficulties and chest discomfort and heart palpitations under the presumptive provisions relating to Persian Gulf claims. To whatever extent the Veteran has at any point suffered from a disability manifested by breathing issues or heart palpitations, these symptoms have been ascribed to known clinical diagnoses of sleep apnea, respiratory symptoms due to obesity, and premature atrial contractions-which precludes service connection under the statutes and regulations that govern claims based upon service in the Persian Gulf. (Those provisions require a qualifying chronic disability as defined above, such as an undiagnosed illness.) Indeed, in this regard, the Board notes that the Veteran's October 2002, April 2010, and January 2015 VA examiners specifically found the Veteran's complained-of symptoms to be fully accounted for by his diagnosis of obstructive sleep apnea, respiratory symptoms of obesity, and premature atrial contractions. 

The Board does not doubt the sincerity of the Veteran's belief that he has breathing issues and heart palpitations due to undiagnosed illness related to his service in Southwest Asia. However, as a lay person without the appropriate medical training or expertise, he is not competent to provide a probative opinion on a complex medical matter such as the diagnosis or etiology of a current disability, undiagnosed illness, or medically unexplained chronic multi-symptom illness. The VA examiners clearly took into account the Veteran's complaints and arrived at medical conclusions contrary to his claims and attributed his claimed symptoms to known clinical diagnoses, which are not a qualifying illness as defined by 38 C.F.R. § 3.317. The Board relies on the examining physician's opinions in this case as they are based on objective evidence, medical expertise, and the Veteran's assertions. No other medical opinions on these matters are of record.

In short, the Board finds that the Veteran's claimed symptoms have been fully attributed to clinical diagnoses and thus are not qualifying chronic disabilities under § 1117. Thus, the theory that the Veteran has undiagnosed illnesses or a medically unexplained chronic multi-symptom illness manifested by breathing issues and heart palpitations that are related to his service in Southwest Asia does not have merit. For all the foregoing reasons, the Board finds that the Veteran's claims on appeal must be denied under 38 C.F.R. § 3.317.

The Board further notes that, in cases where a veteran applies for service connection under 38 C.F.R. § 3.317, but is found to have a disability attributable to a known diagnosis, further consideration under the direct service connection provisions of 38 U.S.C.A. §§ 1110 and 1131 is warranted. 

Although the Veteran has primarily asserted that his breathing issues, chest discomfort, and heart palpitations are due to an undiagnosed illness, he has additionally argued that the disorders may be related to service. The Board is required to assess the credibility and probative weight of all relevant evidence, including the credibility of the Veteran's statements. McClain v. Nicholson, 21 Vet. App. 319, 325 (2007). In doing so, the Board may consider factors such as facial plausibility, bias, self-interest, and consistency with other evidence of record. Caluza v. Brown, 7 Vet. App. at 511; see also Jandreau v. Nicholson, 492 F.3d 1372, 1376 (Fed. Cir. 2007); cf. Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000). 

The Veteran is competent in some cases to self-diagnose some disorders despite his status as a lay person. However, he is not competent to diagnose obstructive sleep apnea or premature atrial contractions, as these are not disorders that may be diagnosed by unique and readily identifiable features, and thus require a determination that is "medical in nature." See Jandreau, 492 F.3d at 1377, n.4. Nevertheless, the Veteran's lay testimony is competent to establish the presence of observable symptomatology and may provide sufficient support for a claim of service connection, if credible, regardless of the lack of contemporaneous medical evidence. See Barr v. Nicholson, 21 Vet. App. 303, 307 (2007); Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006). 

With respect to his obstructive sleep apnea and his premature atrial contractions, the Board has also considered the Veteran's statements regarding continuity of symptoms. However, in a decision the United States Court of Appeals for the Federal Circuit held that the theory of continuity of symptomatology can be used only in cases involving those conditions explicitly recognized as chronic under 38 C.F.R. § 3.309(a). Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). His sleep apnea disorder and premature atrial contractions claims are not diseases identified under 3.309(a). As such, continuity of symptomatology is simply not applicable in the present case. 

Having determined that the Veteran's alleged clinical history regarding his obstructive sleep apnea, respiratory symptoms due to obesity, and premature atrial contractions is inapplicable, the Board next considers that service connection may be granted when the evidence establishes a medical nexus between active duty service and current complaints. In this case, the Board finds that the weight of the competent evidence does not attribute the Veteran's obstructive sleep apnea, respiratory symptoms due to obesity, or premature atrial contractions to service, despite his contentions to the contrary. In fact as noted above, the VA examiner determined there was no etiological link between the Veteran's currently diagnosed obstructive sleep apnea, respiratory symptoms due to obesity, and premature atrial contractions to active duty. Adequate rationale was provided, as noted above. There are no contradictory opinions of record. 

The Board has also considered the Veteran's statements asserting a nexus between his currently-diagnosed obstructive sleep apnea, respiratory symptoms due to obesity, and premature atrial contractions and active duty service. The Board reiterates that he is competent to report symptoms as they come to them through his senses. However, obstructive sleep apnea and premature atrial contractions are not the type of disorders that a lay person can provide competent evidence on questions of etiology or diagnosis. Such competent evidence has been provided by the medical personnel who have examined the Veteran during the current appeal. Here, the Board attaches greater probative weight to the clinical findings than to his statements. Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) ("although interest may affect the credibility of testimony, it does not affect competency to testify").

In light of the above discussion, the Board concludes that the preponderance of the evidence is against the claims for service connection and there is no doubt to be otherwise resolved. As such, the appeal is denied as to these claims. 


ORDER

Service connection for breathing problems (sleep apnea) and chest discomfort (respiratory symptoms due to obesity) is denied. 

Service connection for heart palpitations (premature atrial contractions) is denied. 


REMAND

Regrettably, the issue of service connection for headaches must be remanded again. 

It is contended that the Veteran's headaches are due to a constellation of symptoms due to illness described under 38 C.F.R. § 3.317, or in the alternative, are secondary to the Veteran's service-connected PTSD. 

A review of the record shows that the Veteran's claim for service connection for headaches was remanded in November 2014. In December 2014, the Veteran's VA examinations were initiated, and the Veteran was sent a letter indicating the importance of reporting for his examination. He was examined in January 2015 for two other claims, and it was noted on the Gulf War examination that a separate neurology examination would be scheduled. There is no indication in the record that the Veteran was sent a letter regarding his neurology compensation examination. What was in the record was that on February 13, 2015, his neurology examination was cancelled by Medical Administration Services (MAS). There is no indication that he was scheduled for or failed to report for that examination. A Supplemental Statement of the Case was issued that same day; however, it did not indicate scheduling or notifying the Veteran of his VA neurology examination. It only indicated that the Veteran failed to report. 

Since there is no indication or evidence in the record indicative of the Veteran being scheduled and notified of a VA neurology examination, or that he was notified and failed to report, the Veteran should be given an opportunity to be examined and a determination made as to the etiology of his headaches, prior to final adjudication of the claim. 

The medical evidence of record indicates that the Veteran had headaches following service performed in Southwest Asia, but that these headaches were not found to have been related to a migraine type pattern that is currently diagnosed. The AOJ must address whether the symptoms, regardless of diagnosis, are related to service. See Clemons v. Shinseki, 23 Vet. App. 1 (2009) (holding that when a claimant makes a claim, he is seeking service connection for symptoms regardless of how those symptoms are diagnosed or labeled). 

Additionally, the Veteran's representative submitted Internet links indicating a correlation between migraines and PTSD. This should be considered in connection with the claim of headaches on a secondary basis to PTSD. 

Accordingly, the case is REMANDED for the following action:

1. Obtain and associate with the claims file any new treatment records, VA or non-VA, that may have come into existence since the time the claims file was last updated by AOJ. 

2. Following completion of the above, the Veteran should be afforded an appropriate VA neurology examination to determine the origin and nature of his headache disorder. The record should reflect the scheduling of the VA neurology examination, to include the date, and if the Veteran does not report for his examination, the record should adequately indicate his failure to report. The Veteran should be advised that failure to appear for an examination as requested, and without good cause, could adversely affect his claim. See 38 C.F.R. § 3.655 (2014). The claims folder (VBMS file) must be made available to and reviewed by the examiner in connection with the examination of the Veteran. All indicated studies should be performed. The examiner must provide an opinion indicating whether it is at least as likely as not (a 50 percent probability or greater) that the Veteran's headache disorder is due to service or caused or aggravated by his service-connected PTSD. The examiner should consider the Veteran's statements and also the Internet cites regarding headaches related to PTSD, provided by the Veteran's representative. If aggravation is present, the examiner should indicate, to the extent possible, the approximate level of severity of the headache disorder (i.e., a baseline) before the onset of the aggravation. 

The term "aggravated" in the above context refers to a permanent worsening of the underlying condition, as contrasted to temporary or intermittent flare-ups of symptomatology which resolve with return to the baseline level of disability. 

Supporting rationale must be provided with all requested opinions. If the examiner cannot provide an opinion without resorting to mere speculation, such should be so stated along with supporting rationale. In so doing, the examiner shall explain whether the inability to provide a more definitive opinion is the result of a need for additional information, or that he or she has exhausted the limits of current medical knowledge in providing an answer to the particular question. 

3. After completing the above actions, and any other development as may be indicated by any response received as a consequence of the actions taken in the preceding paragraphs, readjudicate the Veteran's claim based on the entirety of the evidence. The AOJ must consider the provisions of 38 C.F.R. § 3.317 and 38 C.F.R. § 3.310 in connection with this claim. If the claim remains denied, the Veteran and his representative should be issued a supplemental statement of the case, and an appropriate period of time should be allowed for response. Thereafter, the case should be returned to the Board for further appellate review, if otherwise in order.

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
BARBARA B. COPELAND
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs